Adele Keim for Appellant Mimi Weiss. May it please the Court, and I'd like to reserve two minutes for rebuttal. Mimi Weiss had a 20-year career as a health educator with Kaiser Permanente. She was fully remote in 2021 when she was fired, and the team she worked for remains fully remote to this day. Your Honors, some COVID cases present difficult and thorny issues, but this COVID case is a simple one. Did Mimi Weiss provide her employer, Kaiser Permanente, with notice of the conflict between their vaccine mandate and her sincere religious beliefs? On these facts, she did, and that's for three reasons. Kaiser created a bespoke web portal for receiving religious accommodation requests. You can see that portal at ER 19. Mimi Weiss answered all the questions in that portal. You can see her responses at ER 19 and 20, and on the basis of those answers, Kaiser Permanente granted her a provisional religious accommodation. You can see that notice at ER 23. That's all you need to provide to find notice, Your Honor. Notice is a bell that cannot be unrung, and if I may talk for a moment about notice. Let me ask you, what did it mean when they said they granted provisional notice subject to change? Yes, Your Honor. So at ER 23, you can see that they said you've received a religious exemption. I'm paraphrasing here. You've received a religious exemption. This is provisional, and then they list why it's provisional. Subject to changes in the course of the pandemic and changing public health guidance and changing policies. It was not provisional, Judge Pez, on the basis of further review of her religiosity or sincerity. It was provisional based on the further development of this global pandemic. So she had no reason to believe that there was any problem with her submission, and indeed, Your Honor, I really think that's the way to understand her answers in October. She knew that she had answered fully and truthfully. She had shared about her own life change, the difficulties she faced in the pandemic, the fact that she had accepted the Lord as her Savior during the pandemic. So that's sufficient. She knew that. Put on notice to Kaiser. Yes, Your Honor. That's all she needed. There's a case. It's not cited in the brief. It's called Reed versus Great Lakes. It's a Judge Posner opinion where he discusses the reasons behind the notice requirement in a religious accommodation case. I think it's instructive, and you can find it at 330 F3rd 931. I'm paraphrasing, but he said the notice requirement exists in religious accommodation cases because religious beliefs and obligations, unlike race or sex, are not immediately apparent in most cases to employers. So that's why notice exists. But once an employer is on notice that an employee needs a religious accommodation, that sort of falls away. And that's why Abercrombie, the Supreme Court's decision in Abercrombie, comes out the way it does, Your Honor. So what happens if we were to agree with you that the district court made a mistake here and we send it back? What happens at the district court? What's in play? What's in play is whether she gets to go forward to discovery. Well, no. So let's say we agree with you that district court shouldn't have dismissed this at Yeah. Okay. And it goes back. So what happens next? It goes to discovery, Your Honor. Okay. And in discovery, so we have reason to believe that there's a lot more to know about why. And of course, Abercrombie says, Justice Scalia says, the text of Title VII is a constraint on the employer's motivations. And that's what discovery, we need discovery to see. But Kaiser has. So if it goes to trial, what are the issues that the jury has to resolve? The jury has to resolve whether she had a sincere religious belief that conflicted with her employer's requirements, whether she notified her employer. We believe that she did. And then the burden shifts to Kaiser Permanente to show that they could not accommodate her as a defense without undue hardship. But of course, she's fully remote, Your Honor. So. Well, we're not there yet. You're not there yet. Maybe you've answered this already, but in terms of trying to figure out the structure of this analysis, it seems that the work being done by the notice requirement is quite minimal. But there is definitely disagreement about that in the district courts. So what do you think is like, what is the space that is left in our case law for there to be such vast disagreement in the district courts about this notice requirement? I don't think there's any ambiguity in this court's case law. If you read Heller, which is the controlling case in this court, the notice requirement is very minimal. So you think the district courts are just being rogue and not paying attention to our case law? I do. I do, Your Honor. And I actually would take you back to Swerkovitz, which is a Justice Thomas opinion in the Title VII context, where Justice Thomas addresses this kind of dynamic. Remember, he was the commissioner of the EEOC for a long time, so he knows the dynamics in these cases well. And he says, concerns about, you know, employees bringing unfounded claims, I'm paraphrasing, but unfounded claims and disgruntled employees should not cause us to use judicial interpretation to fix the problem. Only amendment to the federal rules or Title VII can fix the problem. I really think that the district courts are getting themselves backwards and overstepping this court's clear holding in cases like Heller about the lightness of the notice requirement, because they're just seeing a lot of these cases. But this court's job institutionally, that I don't have to tell you, is to hold the line. The Constitution doesn't sleep during the pandemic. Neither does the statutory law. So the district court knocked this out at the prima facie stage. Is that correct? Yes, Your Honor. Yes, Your Honor. Just said what you've alleged, at least as to the third prong, doesn't cut it. And the district court wrote... For purposes of the prima facie. For purposes of the prima... And the district court agreed that these are religious claims, not something else, and agreed that Meena Rice has adequately pleaded sincerity, which is correct. You almost never decide sincerity of the motion to dismiss or even summary judgment. It's a question of fact for the trier effect. So this case should go forward to discovery. So let me ask you this. Where do you think the district court really went wrong? I think that the district court, although having ruled correctly on religiosity and sincerity for the motion to dismiss stage, tried to smuggle those back in under the notice analysis. The district court erred when the district court acted as if the submission in October could undo, could unring the bell. It can't unring the bell. I would also just say, I mean, the notice that was provided in October was adequate under this court's case law. Remember, Heller, all the employees said to his boss was, I need tomorrow off to go to my wife's conversion ceremony. And Heller said, that's enough. And any further burden on notice would risk getting into an employer-based inquiry into whether this was really a requirement of your faith or just something you wanted to do or had a personal preference about. They said, we have to tread lightly for notice. Let me follow up on a question that Judge Paez asked earlier. In your view, can concerns about sincerity and bona fide-ness, I suppose, ever be resolved on a motion, on a legal motion, or does that always have to go to a jury or a fact finder because it's a fact question? Your Honor, it's rarely appropriate on a summary judgment motion in a Title VII case. And I see I'm almost out of time. So it's rarely appropriate. So I think about, like, Judge O'Scanlan's concurrence in the World Vision case where he restates kind of his textbook law that this is rarely going to be, sincerity of a religious belief specifically, is rarely going to be decided on the motions. But your position is that if there's any work to be done on those topics at a legal motion stage, it has to be under the sincerity bona fide aspect and not under the notice aspect. On these facts, your Honor, certainly, on what's been pled here with notice as clear as it is here, if there's a case like Adeyeye where someone didn't use the word religious and there's a dispute about whether they were, you know, Adeyeye was the sweetener factory workers case. He said, I need to go to Nigeria to take off for my father's funeral. And there was a dispute about whether he provided adequate notice that that was a religious obligation as opposed to a family obligation. So I could see hypotheticals where that would apply. But that's not this case, Your Honor, where she used a bespoke religious exemption request form and said, I'm a Christian Jew. Here are the Bible verses that make me say I can't take this vaccine. Please give me that. So, you know, I think sincerity would be almost never appropriate on a motion to dismiss, rarely appropriate on summary judgment, as Justice Scanlon says in the World Vision case, and is generally speaking a question for the fact finder. So if Kaiser wants to defend this case on the basis of sincerity, it's going to have to do that to the trier effect. And if I may, I think you've answered my question. I want to make sure you get a little time for rebuttal. Any further questions? Okay. We'll make sure you've got a couple of minutes. Christian Roli appearing on behalf of the Permanente Medical Group. May it please the court. I think this is a fairly straightforward case, and it really comes down to, in the first instance, the first thing you have to look at is her refusal to answer the follow-up questions. If you look at the CMS regulations that were in effect requiring health care providers to basically only grant exemptions where there was a strong basis to do so or a clear basis, we've cited the exact language in there, and they specifically refer in those regulations to the EEOC guidance. So if you take a look at that. Well, let me ask you, let me, you know, so she, how do I want to say this? Whatever happened at the Kaiser, you know, at the employer level, I mean, she was terminated ultimately, and she's pursuing a Title VII case, and we're here on the district court's dismissal under 12b6 of that case. Those regulations that you're referring to have nothing, they don't undermine Title VII. They don't add a new requirement to 12b6. We look at the standards under 12b6 to evaluate whether she has a claim. And maybe I didn't make it clear. I was going to say the CMS regulations, Judge Beha, refer to the EEOC. Judge Paez, that's Judge Beha. I'm sorry, my apologies. Refer to the, refer specifically to the EEOC guidance. And if you look at that EEOC guidance, which we've quoted in here, that EEOC guidance specifically talks about the employer needing to ask additional questions if it appears on the face of the request that there's a potential conflict. Well, let's go back for a second then. Because you only get to ask additional questions if what you were given in the first instance isn't enough, right? So if we go back to Heller and the state, our statement of law there about what needs to be done to satisfy this notice requirement, it says enough information about religious needs to permit the employer to understand the existence of a conflict between beliefs and job duties. So when I looked at her initial form requesting the exemption, as your friend across the aisle mentions, she references her specific religion. She references specific provisions or scriptures from her religion that support her view. So there's, the employer cannot miss that she's making a religious claim. And so what is missing from that initial information that allows the employer to ask further questions? So I think there's two things there, your honor, that we can talk about. So I think the first thing that you need to look at is it's not just that she's religious, it's how does that religious belief conflict with taking of the vaccine? And that is often skipped over in this. So my body of temple, that could mean whatever you want. And if you look at Wisconsin v. Yoder, it talks about the fact that in an ordered liberty, we can't have a situation where people basically get to decide for themselves. So if you read that- I mean, the very first sentence of her exemption request says, quote, my religious beliefs as a Christian Jew do not allow me to receive a COVID-19 vaccine. So you understand the claim that she's making is in the nature of religion, and you understand her claim about what that religion requires or doesn't allow her to do. What else is needed on the employer side? You read further in there, your honor, she talks about having taken vaccines before. And if you look at specifically at the EEOC guidance on this, and stepping back a little bit- So if she had just had that first sentence, would that have been enough? No, it wouldn't have been, because again, it doesn't- there's no explanation of how her religion prevents- Well, she goes on to say, it goes on to say, I consider these COVID-19 vaccines to represent a defilement of my body, blood and soul, and a rejection of the vaccines trust we must have as Jews in the natural healing powers bestowed upon the human body by our creator. So again, if you read the thing she says, I've taken vaccines before, she talks about it in there, and that's specifically what they were asking about. So we've got to step back. This is not in the context. If you look at the Heller case, Heller is a very straightforward case. Somebody comes in and they say, I want to take it off to go through the conversion ceremony, right? For a couple hours, and that's rejected. The first defense of the employer is a conversion ceremony is not a religious event that's covered. Well, obviously that's wrong, and it's a stupid argument to make. So the court of the Ninth Circuit throws that out. The second argument is that, you know, in terms of he could have just changed the date of the conversion ceremony. Well, again, clearly that's wrong under well-established law. You don't have to do that. So we get to the third explanation of the employer in that case, and the explanation of the employer was in that case, well, he didn't give us enough information. But if you actually read Heller on page 1438 of Heller, the court says, we knew that he knew that they were Jewish. He knew his wife was going through the conversion ceremony, and he told them the conversion ceremony. This is enough. There's a direct connection between it. The second thing I would talk about is... And I just, I'm not understanding why you think there's not a direct connection based on what she told her employer. Because, again, there's no connection. Again, what does it mean my body's a temple, right? So throughout history, there have been vaccine mandates at healthcare, you know, employers. This is on it, right? Because it's never been an issue before. And so suddenly there's 25,000 requests for vaccine exemptions based on alleged religious beliefs, right? And as is stated in some of the materials that you have, they're explaining why they're going back to ask additional questions. There's a whole group of people out there that's talked about in the papers that are talking online about how you claim to have religious exemption, all these other things, right? All of this sounds insincerity. No. So it goes to what is the connection between... She cites a Bible, right? If you actually look at her arguments, in the initial thing she talks about a needle stick or not wanting to have a needle. If you read the actual briefs that they talk about, and this is AOB 21, she moves on to she's against all medicines in general or anything that would alter her body. So the questions that were asked her were specifically directed at what, have you taken other medicines, not what are they, but have you taken them and why is this one different? Why is this different from whatever other vaccines you've gotten in the past? What is it about this vaccine that your religion specifically prevents? And normally in a religious case, there's things like, I want Sunday off, I want to wear certain clothing, things like that, right? This is a situation where because of vaccine hesitancy, it's clear there's widespread opposition to vaccines for reasons having nothing to do with religion, right? There's huge vaccines. So we're operating against the background where people have an incentive, as was saying on the website, just say my body's a temple, right? And so we've got people dying. I think that the employer's concerns here are completely understandable. And the supplemental questions that they want to ask, completely understandable. What I'm just not understanding is how all of that fits into the notice aspect of this standard, as opposed to the sincerity or whether this is even a bona fide belief. And that's a different part of the analysis. The district court doesn't base its decision on that part of the analysis and specifically says it's assuming sincerity and a belief, and it's only saying inadequate notice. And based on our statement of what notice is required in Heller, I'm struggling with how it is that what she said wasn't sufficient notice. Again, maybe I'm not making myself clear. Let me step back a little bit and talk about this. So let's say you have a situation where somebody comes in and says, my religious belief is, doesn't matter whether they cite a Bible or whatever. You're just avoiding Judge Forrest's question. I'm trying to explain how in the context. The problem is you're in 12b6. And our case law with respect to the prima facie part of a title seven or the state analog, it's very low. And under Heller, in the religious context, not much needs to be said. And like Judge Forrest said, we all sympathize with what the employers had to go through. But as I was saying earlier, none of these federal regulations change title seven or the regulations or 12b6. We look at her claim and what the district court did in light of those legal standards. I mean, basically what you're saying, Your Honor, is where the Permanente Medical Group in the middle of a pandemic followed exactly to the letter what the EEOC says you're supposed to do if there's a reasonable belief or a reasonable question, and she refused to participate. That's the key part of it. She said, I don't have to answer your question. When you get to discovery and you take her deposition, you're going to learn a lot more. But for example, in a reasonable accommodation case, in a disability case, there has to be an interactive process, right? Are you claiming that she pleaded herself out of the case because she mentioned that she had refused, she had taken the vaccine in the past? Is that your case? If you look at the EEOC guidance that was put out related to this, one of the things they said is acting consistently in the past. So if you look at the situation, again, we all agree that... Isn't that guidance getting at sincerity and whether there's actually a belief that has to be complied with as opposed to do I know that she has a belief on the table? No, that's getting to what the employer is supposed to do when presented with a religious request before you move to the undue hardship step, right? So in other words, an employer in the position here, I mean, we can't conduct discovery on a plaintiff while she's working for Kaiser. There's only limited things they can do. And I agree, those are pretty limited. But in those circumstances, Kaiser is faced with a situation where, and again, approved 10,000 of the people out of the 15,000 unique individuals who put it in. So they are trying within a very short period of time to make determinations. And what they're looking for here is essentially, is there something in the questions that were asked here, especially in the context, or excuse me, the statement that was given, especially in the context of the background of what was going on, what should we do? Because there's a conflict. She says, I've taken vaccines before, but I can't take this one. So what's the difference? That's the question. And she says, I don't have to answer that. All right, we've taken you over. Any further questions? All right, thank you for your argument. All right, we'll put a minute on the clock. Your Honor, this is a motion to dismiss. Sincerity is not appropriately decided on these facts. Having decided to fire Mimi Weiss as they admitted on the basis of two web forms with no personal interactions or no opportunity to talk to any human being, and you can look at SER 45 for their answer, where they admit that that was their process, that was the process they followed here. Having decided to do that, they need to live with the consequences of those actions in litigation, which means they cannot dismiss this case at the pleading stage. They at a minimum have to go forward to discovery. They produced on September 26th in the JCCP action, they produced a 24 item checklist, denial review criteria, 13 of 24 items for denying COVID exemption requests related to sincerity. They dismissed thousands of cases on the basis of sincerity, and now they're trying to bar the courthouse door and escape all discovery. That is not permissible under this court. Well, Ms. Weiss will have to undergo a deposition, right? Absolutely, Your Honor. And she's prepared to testify. She's prepared to testify about how she lost her job and gave up the career she loved and had to leave the state because she would not compromise on her religious principles. And she can testify that she went all the way up the chain as far as she could go seeking a human being, her supervisor, the director, Dr. Aswari, Dr. Chen. Will someone listen to me? I think it's a little strange that she didn't answer all the questions in the follow-up. So, Your Honor... That's a little... I mean, but that's the whole question of the sincerity. It's all a question of sincerity. Yes, but I mean, it's a little questionable. Judge Paez, they asked her about other medicines four separate times. If she'd been in a depo, she could have said, asked and answered, Your Honor. Objection, asked and answered, right? So, but that's all going to come out in discovery. I have no further... Great. Thank you, counsel. The matter of Weiss v. Permanente Medical Group is submitted.
judges: PAEZ, BEA, FORREST